May it please the Court, Philip Smith on behalf of the appellants Mrs. Medina Tovar and her husband Mr. Alonzo Martinez. Your Honor, Mrs. Medina Tovar, when she was 12 years old, was raped at knifepoint. Can I ask you just to pause for one second? Can you ask them to step out? Can you ask them to step out? No, if they could have that conversation somewhere else so we can hear counsel. I'm sorry. Please proceed. I'm sorry, Your Honor. Your Honor, Appellant Mrs. Medina Tovar, when she was 12 years old, she was raped at knifepoint by a stranger in her own bedroom. And her sense of safety and security in the world was taken from her. And really, every day since then has been an effort for her to get that sense of safety and security back. Congress created the U-Visa program for Mrs. Medina Tovar and people just like her, who was a victim of a serious crime, who cooperated with law enforcement, who suffered severe physical or mental harm. Mrs. Medina Tovar applied under the U-Visa program. She was approved. Now, that's only half of the program, because for her to be safe and secure, she can't be safe and secure if her family is not safe and secure. And that was the other half of the U-Visa program, which Congress created. Once a principal, Mrs. Medina Tovar, is granted U-Visa status, her husband and children, who are accompanying or following to join her, are also eligible for U-Visa status. Well, the problem you have is, and I appreciate your story you've told us, and I appreciate the circumstances, but the problem you have is trying to tell me whether accompanying or following to join is ambiguous or not. In the statute as it is now, I can't find that it is anything but ambiguous. Well, it's our position that it's actually very clear. Well, that's your position, but I don't find any place to make that determination. I'm being a devil's advocate here, but I'm trying to give you, give me the opportunity. I looked, is accompanying or following to join defined in any place in the statute? No. It's used in numerous subsections, but it's never defined. Would you agree with me? It's never been defined. That's correct. All right. Does the surrounding language designate when qualifying relationship of accompanying and following to join family member must exist? In this statute, yes, Your Honor. Because Congress, well, Congress. What part of the statute says that? In the immediately preceding subsection, where it talks about eligibility for derivative family members, where it is a sibling under the age of 18, Congress says they have to be under the age of 18 on the date of filing. So where Congress wanted to tie eligibility to the date of filing the application, Congress says so expressly, directly in the statute. Is that your argument? Well, that is part of the argument, yes. Because I don't buy that at all. I guess I'm trying to figure out what is the best argument to have. If that's the best one, then I'm going to listen, but I don't believe it. Okay. Well, that's one argument. The other argument is when we step back and look at accompanying to following to join in the case law, accompanying to following to join has always been accompanying is present, moving forward, following to join future. There's never been a past durational requirement. And so it's in the case law, there's been situations where maybe the spouse. The reason I'm asking you these questions is that if I can't find that the statute is clear and unambiguous, then at that point I am bound by Chevron to give some deference to the agency into how to fill the gap that there is in this statute. So unless you can convince me that it is clear and unambiguous, then at that point I have to give deference to what the agency suggests. Then at that point, if the agency does something that's totally arbitrary or capricious in their interpretation thereof, then I can say, well, your interpretation is out the door. But the first step is, is the statute clear and unambiguous? And that's why I said, was it defined? Does the surrounding language say, and I don't believe that it does, does the statute's legislative purpose dictate an answer? It doesn't. So I'm look, there's a gap. At that point, then you've got a tougher question because then you've got to say they were arbitrary and capricious in the administrative regulations that they drafted to fill the gap. That's why I'm asking the questions. I understand. Well, and we would say they were arbitrary and capricious. Well, I understand. But before we get there, we don't need to get there. The overall purpose, the context of the statute. you're saying is so binding on me that I would say that this absolutely defines accompanying or failing to join. Well, I would say. What provisions thereof? The statute where Congress required the data, where they looked at data filing for eligibility. So what statute is that? That's 8 U.S.C. 1101U, small i, i, large i. And that's enough to make this clear and unambiguous? In two other sections, at 8 U.S.C. 1184, small p, 7a, they tie data filing where they're also looking at for an individual under 21 and they're considered to stay under 21 on the date of filing. In P7, 8 U.S.C. 1184, P7b, again, they tie it to date of filing. So Congress knew how to say date of filing if they wanted that to be an eligibility requirement. I see what you're saying. Okay. And the overall purpose is a humanitarian purpose to give, to provide some kind of safety and security to the U visa beneficiaries. Let me ask you this question because I understood your argument to be that by the time this statute was enacted in what, roughly 2000? Correct, Your Honor. That the phrase accompanying or following to join had in fact, even though it's not defined in the statute itself, it had in fact acquired kind of, it's like a term of art that had acquired a settled meaning that always meant, you know, at the time you're going to get the actual benefit or get the visa or whatever, not at the time you applied. And that sort of settled meaning is what we assume Congress would have legislated, you know, that backdrop is what we would have assumed Congress legislated against. And so therefore, in the provision you were referencing involving unmarried siblings under 18, that's why Congress needed to specify a different rule. That's absolutely correct, Your Honor. Okay. But I seem to remember the government saying, well, the premise of that argument is wrong because, in fact, there was no settled meaning. It meant this over here. It meant that over there. And so it was just all a mess. So what is your response to that? Well, they did say that, but actually when you look at each provision, every time it was used, it always has always meant at the time the principle is approved, their spouse or their children were allowed to accompany or to follow the joint. It's always been used that way. The district court judge compared it to the asylum regulation, the asylum situation. And that's exactly right. That's exactly how it's done in that context. If someone is granted asylum, then their spouse and their children are eligible for accompanying the following to joint status. And that's what we're – that's – I'm sorry. And that's what we're saying. It's always been used that way, and that's what Congress intended for it to be used that way in this case. And in that context, let's just say that you – someone applied for asylum in 2014, okay, and they weren't married then. They're granted asylum in 2017, and in the interim they were married. So in the asylum context, can the spouse get derivative? Yes, Your Honor. There's a petition they file. They show that they were married. Even though they weren't married at the time of filing? Even though they weren't married on the date of filing. That's exactly right. I see, yeah. And, in fact, we do that regularly. We add when we're – we're representing an asylum applicant, and they get married while their application is pending. There's a mechanism to notify the agency, and that individual is then added and granted at the same time. If we need to go – and so it's our position, clearly, plain language, Chevron Step 1. If we go to Chevron Step 2, it still has to be a permissible construction of the statute. In the agency regulation, there's – it's justified before the district court, before this court, that it was done for marriage fraud. Correct. But the agency regulation, there's no mention of marriage fraud. In fact, there's no mention of any authority to make this regulation. Hold on just a minute. The mention of the authority to do it, what we're really looking at is, is this arbitrary or capricious? So at that point, we're saying, is it arbitrary to use this to make sure marriage fraud doesn't happen? And, frankly, that's a very low standard, a very low bar. And so just to say, because there's no authority, I don't know what authority they're using, there's no question marriage fraud is the problem. There's no question they'd not like to have marriage fraud. They wouldn't like to have people be allowed this kind of thing because of a fraudulent marriage. So making the regulation the way they do to eliminate it is not arbitrary. It's not capricious. It's not without foundation whatsoever. And that's my standard of review, even if I don't agree with it. That's my worry with your argument. Well, I think the response is they didn't even say it was marriage fraud. When they published this regulation, there was no reference to marriage fraud. There was none. It's only been presented. Oh, your argument is when they publish this regulation, they've got to tell you the reason why they're doing it? And if they don't, it's not a reasonable regulation? Is that your argument? There has to be some basis for it. That's correct. Well, that's the basis they're giving me. The thing you're arguing is because it wasn't in the publication when they enacted it, it isn't valid. I can't find any law for that. So every one of these has to have a rational basis. There's no reason why or why not. And that's all I'm trying to get you to tell me. It seems to me totally it can't be arbitrary or capricious. So where do I go? Well, if there are, I would point, and they cite in the case of Ruiz Diaz where they talked about the religious workers. Even in that case, the court cited and the agency came forward to show that we have evidence of fraud in the religious worker program, and therefore the timing of when they can apply, that's a permissible construction of the statute. Well, that's exactly what happened here. You challenged it, and so they're coming up with that same kind of stuff. But there's no evidence. They've presented no evidence of marriage fraud in the U visa context. And there's practically, and sure, no one wants to encourage or allow marriage fraud, but an individual that gets married while they have a U visa application pending, there's no real incentive there to commit marriage fraud. They don't know if the U visa petition is ever going to be approved. And so it's not like they're marrying a United States citizen. I mean, that's where we had the marriage fraud amendments back in 1986. It's not like you're marrying a citizen who immediately then you have an opportunity to apply for permanent resident status. And that was where the real concern was. There's been no evidence at all that there's fraud involved in the U visa program. But, okay, I understand your argument. Let's go back to this asylum and refugee status. Asylum and refugee differs significantly from U visa. A U visa person, a non-immigrant U visa status is limited. The U visa recipients are already present in the United States. They've become victims of this crime. They need not demonstrate why they left their home or their country or why they can safely return. Non-immigrant U visa statutes generally last for a period of four years and must be maintained for three years before the U visa can apply to adjust the status. That's not anything to do with asylum and refugees. That's a totally different situation. It's a totally different application process that has completely different criteria. It's not about the application. It's about the asylum and the refugees are granted to non-citizens fleeing the United States to escape harm or persecution in their home country. That's a totally different situation than what we've got with the U visa. How can we apply what they do in an asylum or a refugee to this? It's a totally different situation. Under a rational basis standard, I can't understand how that can happen. Well, it's that they're both humanitarian programs, and once the principal has met the requirements and has been granted that status, then in both situations Congress has decided that the family members are allowed to live with them here in that same status. And so in that sense, when we're looking at the derivative family members, the programs are enacted in the same way. You're over your time. I'm sorry. We'll give you a couple minutes for rebuttal. Why don't we hear from the government now? Your Honor, may it please the Court, Aaron Goldsmith on behalf of the government. Before I get to the argument, I just want to clarify one point on what the two paths forward for, the two avenues for redress for someone who has a U visa and is married. If the couple is married at the time that the person files the I-918 form for a U visa, the petitioner can also petition on behalf of their spouse. They would then have to wait three years to adjust their status to a lawful permanent resident. By adjust I mean obtain a green card by filing an I-45. So that's one path forward if they were married at the time the initial petition was filed. There's an alternative path forward if the couple is not married at the time the petitioner files the form I-918 for the U visa. The petitioner can't petition at that time, but what they can do is they can wait three years, apply to adjust to lawful permanent resident status, and then file a petition, an I-929 form. Is that under 1255M? Yes. And that's a much more difficult standard to meet at that point. It is a different standard. We agree with that. So why are you telling us the two pathways? Just so that there is an alternative. It's not a situation where there is nothing that the spouse can do. It is a different path. And a much more difficult path to satisfy if you go the other route. So I don't find that very helpful. Why don't you start with responding to your opponent's argument that as of 2000, when the statute we're dealing with was enacted, that the key phrase here had, in fact, developed. It had a well-settled meaning that Congress presumably meant to incorporate. And, therefore, that's why we see the deviation from the normal rule in that provision that deals specifically with unmarried siblings under 18. So what's your response to? And what I'm really interested in, do you have specific examples pre-2000 where that phrase was given the meaning that you now say it has in this context? No, but what we're saying is that there are, as Judge Smith noted, refugee and asylum situations are quite different. There are different policy concerns. They developed in a different context. And, generally, they involve someone in another country trying to come to this country. The U visa and the T visa, which were the two that come from 2000, both involve situations where generally you have a person inside the United States in the context of T visa. It's always within. Again, I don't find that helpful because all I'm saying, or all I'm asking, rather, is that their position is that in every single immigration statute where that phrase is used, not just in the asylum context, every other context where accompanying or following to join is used, it has always been understood to mean at the time it's kind of on the back end, right? Not at the time you file your application. And if that's true, it seems to me that we would, under normal principles of statutory interpretation, we would say that Congress would have understood that that phrase has that meaning. So when they use those exact same words, it's a funny phrase. It's not like, right, it's very much a term of art. When they use that phrase here, they must have meant to incorporate that meaning that had already been settled. And it seems like quite good evidence of that is the fact that when Congress wanted to deviate from the time of filing the application, I'm sorry, time of getting the benefit, when they wanted to peg it at the time of filing the application, they said so very explicitly. And then in the provision that we're interpreting, they don't use that phrase. So it seems to me that's pretty clear textual evidence that Congress had in mind a default rule in the background. They deviated from it when they wanted to, and then there's no deviation in the provision that we're interpreting. So the counter to that is if Congress is silent and a statute is silent as to a certain point, the agency steps forward and writes a regulation. That doesn't, and Congress subsequently uses the same language, that doesn't follow that they are incorporating this regulatory language because they are letting the agencies write regulations to reflect the concerns. And there has been this increased concern about marriage fraud reflected in these various statutory provisions enacted by Congress. And so in keeping with that, both for the T visa context and the U visa context, which is at issue here, the agency has, in the face of silence, has drafted, come up with a rule. Can I just, the reason I'm, sorry to interrupt, but when you say in the face of silence, I guess I just immediately sort of resist that because if you accept my premise, and that's why I wanted you to contest it if you don't agree with it, if you accept my premise, there's no silence. Accompanying or following to join has a meaning. It means not at the time you file the application. So if that's true, when Congress used that phrase in this statute, we would assume that that's the meaning they meant to incorporate, right? So there's no silence. Congress has spoken. They've said we want the time that we're going to measure to be the back end time, the time when you get the immigration benefits. So there's no silence for the agency to step in and fill. Congress has spoken to the issue. And that's why I say to me it's so telling that when Congress wanted to deviate from that background rule, they did so very explicitly. And it's not even like in some distant statute. It's in the exact same place that we're supposed to be looking at to figure out what Congress meant. So there's no dispute that if Congress speaks to an issue, that's the end of the matter, and that Congress could have expressly stated one way or the other how this timing issue is going to be, how it's going to work, whether or not they have to be married at the time of the filing of the I-918 or not. And if you accept the premise that Congress has spoken to this issue, then that's the answer. But for the reasons Judge Smith articulated, I don't think that's correct because there is nothing. But what other. . . I'm sorry. Go ahead. No, no, no. I'm sorry. I'm not trying to. . . I think you have to answer Judge Watford's question. What he's saying is Congress had in its mind a term of art with accompanying or following to join. That's his argument. Now, I tried to get him to that argument. He wouldn't quite get there this morning. But the honest truth is his argument in his brief is that this accompanying or following to join is a term of art. It has a clear meaning. And when Congress put that in the statute, they had that term of art in their mind with that language. And that's what my colleague is asking you the question about. And that's why I'm asking. . . I would love to have you answer it. It seems to me that in support of that argument, he goes to the Foreign Affairs Manual's Non-Immigrant Visa Classification Provision and suggests that that's in support of his argument. But I would like to have you answer his question. And rather than me answer it for you, I'd like to have you answer it because I've had my colleagues answer questions for you. But I don't want that to happen here. I want you to have to answer that question because if you don't answer it correctly, you might lose. Well, first of all, I don't mean to disrespect any of you. I apologize. I came across that way. So the point is if you look at asylum and refugee, they do have different concerns. But there's also a difference. For asylum, the relationship must exist at the time that it's approved, whereas for refugee, the timing issue is at the time of admission into the United States. So if the whole point is that it has only one meaning, here's an example where it has two different meanings in two different contexts and regulations that were promulgated, I believe, on the same day. And that's prior to 2000 when Congress enacted this statute. But the reason the refugee, I'm not as familiar with the refugee part as for the asylee, but the refugee person is in their home country. They've applied well ahead of time. Correct. Right? So in essence, when they arrive and are admitted, that is the back end time. That's not the front end time of applying. So that seems to me that example does not help your position here. It's just a further illustration that the settled meaning that accompanying or following to join had was that it's at the back end time, the time when you're going to get the benefit. Well, I think what we're kind of left with is that the definition, the situation, how it's interpreted in the context of asylum should control. I mean, what we seem to be falling back to is that's, since it defines that as at the time that the application is filed, that's how it should be applied moving forward for any category that Congress creates, unless Congress comes up with and specifically gives a different rule moving forward. And I don't think that's a fair reading of how immigration law has developed in that there are different programs with different policy concerns. They've developed at different times. They are applied differently. There are different provisions, such as the provision I was talking about, 12.5M3, that provides the situation where a spouse could apply for a green card immediately in the visa context. So the bottom line is, of course, Congress could have spoken to this. That's true of any question of statutory interpretation. There would be nothing to interpret if there was an explicit answer provided by the statute. But here what we have is a statute. We have a regulation. A regulation is directly on point. There is another avenue of redress that we don't know if Congress, in drafting 12.5M3, had that in mind, that there is this other avenue of redress, but it's at least possible. Okay, so can I just ask one last stab at this? Put aside asylum and refugee context, is there any other specific place in the entire INA where you can point to where the phrase accompanying or following to join has been understood to mean at the time the person files the application for whatever relief they're seeking? With the exception of T and U visas, no. Okay, T doesn't help you because it's enacted at the exact same time as U. So you have nothing other than asylum and refugee. And if I don't end up finding those persuasive, which I don't think I do for the reasons I've told you, you have nothing else to rebut the argument that that phrase had, in fact, by 2000, acquired a settled meaning that's contrary to the position you're now arguing. Well, I mean, it's a little bit hard to refute the idea that something has a settled meaning other than to point to, well, here are two different things that have two different meanings. But they don't. That's what I guess I'm telling you. But I mean, asylum and refugee do have different meanings. You said there's a very good reason for why they would have different meanings, why refugee would be treated differently. No, no, no, but I'm saying— And you're right. There is a very good reason. In the refugee context, just help me with this, isn't there, like, you file an application and then sometime much later you get admitted? Correct. So what am I missing? To me, it's not measuring the time as when you filed. It's the time of admission. So it's just like this, isn't it? Well, no, because here you have people applying here in the United States, so there is no—in a sense, there's no admission. Let me just put it in these terms, like I did with asylum with your point. So refugee, you apply for refugee status in your home country in the year 2015, and you're not married. You get admitted in 2018, and in the interim, in 2017, you did get married. So when you are admitted as a refugee, do you get to bring the spouse, even though you weren't married at the time you originally filed back in 2015 for that relief? I think you do, right? You do, yes. That's what I'm saying. So you lose on that. Doesn't it support his argument as to how the phrase is being used in this context? That's what I'm missing. So you say, this is all I've got, and then I say, it seems to me it helps him, not you, and so what am I missing? I'm missing something. Well, I mean, I don't think you're missing something. I think that we simply disagree as to whether or not the statute is silent on a certain point. You believe it has a clear meaning, as reflected primarily by the meaning given to it by the agency in drafting regulations in the asylum context, and that because the agency has acted in an asylum program that's far older, that developed in the aftermath of World War II and had other policy concerns, that because it has a meaning in the asylum context moving forward, that that is what, if a congressman wants to give it a different meaning, it has to explicitly say so. So is your position there that we have to give deference to the agency's determination whether the statute is unambiguous or ambiguous? No. The court looks to the statute and determines is it ambiguous or not, or is it really silent on something. Our position is it is silent. There is obviously a counterargument, which we've developed or which we've discussed here, but our position is since it's silent, the agency has filled that silence by drafting a regulation for both T and U visas, and that that's something that has not been complied with. And as a result, the district court properly entered summary judgment. The agency complied and correctly applied. Can I ask one more question? In subsection 1, capital I, I should say, it says, Does the spouse, children, unmarried siblings under 18 years of age, on the date on which such alien applied for status under such clause and parents of such alien, as I read that, on the date on which such alien applied for status modifies only unmarried siblings, does not modify spouse, children, parents. And if that, I mean, doesn't that give another, I'd be interested in what your response is. I mean, does that affect the plain meaning of the statute? I see my time has expired. May I briefly respond? Of course. So, yes, the short answer is yes. The longer answer is, when it came to siblings, Congress could have done several different things with respect to how to treat, again, we're talking about U visa victim of a crime, to petition on behalf of a sibling. They could have said, yes, they can petition on behalf of a sibling. No, they can't. Or something else, and they did something else with this provision allowing, that you just read, allowing them to petition on behalf of a sibling, but only to the extent that they are under 18 and unmarried. And because of this kind of a narrow exception, it should be read narrowly. It shouldn't be seen as something that trumps the overall framework, which is that if Congress spoke to one particular exception and felt strongly about that particular exception, and that it would write a rule and not leave it to the agency, in that one narrow scenario, kind of the inference is that it should not be applied in other contexts and other scenarios. I see that my time has expired. I would just, to sum up, say plaintiffs may be entitled to relief, but they're not entitled to relief they're seeking in this lawsuit for the reasons that were just stated, that the agency correctly applied its own regulation, the decision of the district court should be affirmed. Thank you, Your Honor. Okay. Thank you very much. Let's give you two minutes for rebuttal. Thank you, Your Honor. Your Honor, I'm not going to take two minutes. I feel like the issues and the questions, the courts correctly articulated it, and I'm sorry I missed on the term of art, but that clearly is our argument. Also, this issue about this provision of 1255M and later being able to apply for permanent residence status, that is a much more difficult requirement. There's an extreme hardship that has to be demonstrated. It's years later. The spouse could easily be deported. There is no safety and security while they're waiting. You know what? That reminds me, and I forgot to ask government counsel. So there's not going to be an issue of mootness in the real near future, is there? Under current processing times, it's going to be at least another three years before we get there. That's all I need to know. Great. Okay. Thank you very much. The case just argued is submitted.
judges: N.R. Smith, Watford, R. Nelson